# UNITED STATES DISTRICT COURT
# FOR THE MIDDLE DISTRICT OF PENNSYLVANIA

| | |
|---|---|
| ESTEBAN RIVERA-LEBRON, | : CIVIL NO. 3:12-CV-1354 |
| Petitioner, | : (Judge Mariani) |
| v. | : |
| WARDEN MONICA RECTENWALD, | : |
| Respondent | : |

## MEMORANDUM

## I. Introduction

On July 13, 2012, Petitioner Esteban Rivera-Lebron ("Petitioner" or "Rivera-Lebron"), a federal inmate presently confined at the Federal Correctional Institution Allenwood ("FCI Allenwood") in White Deer, Pennsylvania, initiated the above action pro se by filing a Petition for Writ of Habeas Corpus ("Petition") under the provisions of 28 U.S.C. § 2241. (Doc. 1.) He challenges disciplinary proceedings that were instituted against him while he was confined at the Federal Correctional Institution Miami ("FCI Miami") in Miami, Florida, and requests that the Court expunge the incident report and restore the good conduct time that he lost as a result of having been found guilty. (See id.)

By Order dated July 19, 2012, we directed Respondent to show cause within twenty-one (21) days why the Petition should not be granted. (Doc. 4.) On August 8, 2012, Respondent filed a Response to the Petition (Doc. 7), along with supporting exhibits[1] (Doc. 7-2) and supporting

---

[1] Respondent submitted the Declaration of Joseph McCluskey, Senior Attorney at the Federal Correctional Complex ("FCC") in Allenwood, Pennsylvania (Doc. 7-2 at 2-7), in which

authority (Doc. 7-1). Our July 19 Order provided that Rivera-Lebron had the option of filing a reply brief within fourteen (14) days of receipt of the Response to the Petition, and therefore his reply brief originally was due to be filed on or before August 22, 2012. (See Doc. 4 at 2 ¶ 6[2].) Rivera-Lebron requested three (3) extensions of the deadline to file his reply brief. (See Docs. 8, 10, 12.) His first two requests were granted, and the deadline for his filing of a reply brief was extended first to September 24 and then to October 11, 2012. (See Docs. 9, 11.) However, his third request for an extension of time, filed on October 12, 2012, was denied, and by Order dated October 16, 2012, Rivera-Lebron was directed to file his reply brief on or before October 24, 2012. (Doc. 13.) Our October 16 Order advised that, in the event he failed to file a reply brief by the October 24 deadline, we would proceed to rule on the Petition. (See id. ¶ 3.) The deadline for Rivera-Lebron to file his reply brief has expired, and the docket reflects that no reply brief has been filed. Accordingly, the Petition is ripe for disposition. For the reasons set forth herein, the Petition will be denied.

## II. Factual Background

---

he refers to the following attachments: Petitioner's Inmate History (Attach. A); Petitioner's Public Information Inmate Data as of July 28, 2012 (Attach. B); Petitioner's Administrative Remedy Generalized Retrieval relating to this action (Attach. C); Petitioner's Administrative Remedy Appeal No. 524287-R-1 and the Regional Director's Response (Attach. D); Incident Report No. 1802327 (Attach. E); the Inmate Rights at Discipline Hearing and Notice of Discipline Hearing Before the DHO issued to Petitioner on November 24, 2008 (Attach. F); and the DHO Report (Attach. G).

[2]Throughout this Memorandum, citations to page numbers refer to the page numbers generated by the CM/ECF System.

2

Rivera-Lebron currently is serving a 270 month sentence of imprisonment imposed on December 10, 2002 by the United States District Court for the District of Puerto Rico for conspiracy to possess with intent to distribute an excess of 50 but less than 150 kilograms of cocaine. (See Doc. 7-2 at 13, Public Information Inmate Data.) He was confined at FCI Miami from April 14, 2008 through May 4, 2009. (Doc. 7-2 at 3, McCluskey Decl., ¶ 4.) He has been housed at FCI Allenwood since April 23, 2012. (Id.) As of the date of this Memorandum, Rivera-Lebron's projected release date is March 2, 2021, via good conduct time release.[3]

### A. The Incident and DHO Hearing

On November 20, 2008, Incident Report Number 1802327 was delivered to Rivera-Lebron charging him with possession or manufacture of a weapon in violation of Code 104 in connection with an incident on that same date. (Doc. 7-2 at 39, Incident Report.) The Incident Report contains the following description of the incident by the Reporting Officer:

> On November 20, 2008, at approximately 8:30 a.m., while searching inmate Rivera-Lebron's, #20343-069, bed, I discovered a 5" home made knife behind the left head end leg on the bedframe.

(Id. ¶ 11.)

On November 24, 2008, the Unit Discipline Committee ("UDC") conducted its hearing and referred the charge to the Discipline Hearing Officer ("DHO") for further proceedings. (Id., Part II.) At that time, Rivera-Lebron received and signed copies of the Notice of Discipline Hearing before the DHO (id. at 42) and the Notice of Inmate Rights at Discipline Hearing form (id. at 41). Rivera-

---

[3]See BOP Inmate Locator, available at http://www.bop.gov/iloc2/LocateInmate.jsp

Lebron initially requested a staff representative for the DHO hearing, but subsequently waived that right. (See id. at 42, 44.) Rivera-Lebron also elected not to call witnesses. (See id.)

The DHO hearing was held on December 15, 2008. (Doc. 7-2 at 44, DHO Report.) At the outset of the hearing, Rivera-Lebron waived his right to a staff representative. (Id. § II ¶ A.) He acknowledged that he had received a copy of the incident report and that he was advised of his rights at the DHO hearing. (Id. at 45 § III ¶ B.) He requested translation, and Officer Mena provided this service during the DHO hearing. (Id.) Rivera-Lebron denied the charge against him and suggested that the weapon could have been introduced and hidden by any one of his five cellmates. (Id.) However, the DHO noted that the weapon was discovered in the leg of the bed occupied by Rivera-Lebron, and that, upon inquiry, Rivera-Lebron admitted that he had occupied that particular bed "for two to three months." (Id.)

In addition to Rivera-Lebron's statement, the DHO considered a picture of the weapon, the incident report, and the more specific description of the location in which the weapon was discovered, which was offered by the Reporting Officer in response to the DHO's inquiry. (See id. at 46 § V.) The DHO noted that, in offering his more specific description, the Reporting Officer explained that the weapon was "concealed in a leg of the bed occupied by Rivera-Lebron." (Id.) The DHO observed that this "physically isolated the weapon to a specific area most accessible to Rivera-Lebron and not easily accessible to the other occupants of the cell." (Id.) Upon consideration of this evidence, including "the physical location of the weapon", which he found to be "under the control and most direct access of inmate Rivera-Lebron", the DHO concluded that

4

Rivera-Lebron had committed the prohibited act of possession or manufacture of a weapon in violation of Code 104. (Id.)

The DHO imposed the following sanctions upon Rivera-Lebron: **(1)** forty-five (45) days in disciplinary segregation; **(2)** the disallowance of forty-one (41) days of good conduct time; **(3)** the forfeiture of twenty-seven (27) days of non-vested good conduct time; and **(4)** a recommended disciplinary transfer. (Id. § VI.) A copy of the DHO's Report was delivered to Rivera-Lebron on January 7, 2009. (Id. at 47 § IX.)

### B. Rivera-Lebron's Administrative Remedy History

The BOP has a three-level Administrative Remedy Program that is available to inmates for "review of an issue which relates to any aspect of their confinement." 28 C.F.R. § 542.10. Inmates first must informally present their complaints to staff, and staff shall attempt to informally resolve any issue before an inmate files a request for administrative relief. 28 C.F.R. § 542.13(a). If unsuccessful at informal resolution, the inmate may raise his complaint with the warden of the institution where he is confined through the submission of a BP-9 form. Id. at § 542.14(a). If dissatisfied with the response, the inmate may appeal an adverse decision first to the Regional Office and then to the Central Office of the BOP. Id. at § 542.15(a). No administrative remedy appeal is considered to have been fully exhausted until it has been denied by the Central Office of the BOP. Id.

The Central Office must respond to an administrative remedy appeal within forty (40) days from the date it receives an appeal. 28 C.F.R. § 542.18. If that time period is insufficient, the

Central Office may extend it by twenty (20) days. Id. The Central Office must notify the inmate of such an extension in writing. Id.

A review of records in this case reveals that Rivera-Lebron has filed a total of thirty-one (31) administrative remedies while in BOP custody. (Doc. 7-2 at 5, McCluskey Decl., ¶ 10.; Doc. 7-2 at 16-33, Attach. C.) Thirteen (13) of these remedies concern the disciplinary proceedings at issue in the instant case. (Id.) The details of these remedies are as follows:

On January 27, 2009, Rivera-Lebron filed an appeal of the DHO's decision finding him guilty of a Code 104 violation with the BOP's Southeast Regional Office at Remedy Number 524287-R1. (Doc. 7-2 at 5 ¶ 11; Doc. 7-2 at 26, Attach. C; Doc. 7-2 at 35-37, Attach. D.) The Regional Office denied the appeal on February 27, 2009 and informed Rivera-Lebron that he could appeal the denial to the BOP's Central Office within thirty (30) days. (Doc. 7-2 at 35.) However, Rivera-Lebron failed to file an appeal with the Central Office within the required thirty (30) day time period. (Doc. 7-2 at 5 ¶ 11; Doc. 7-2 at 17, Attach. C.)

Instead, more than eight (8) months after the Regional Office issued its response, on November 12, 2009, Rivera-Lebron filed an administrative remedy appeal with the Southeast Regional Office. (Doc. 7-2 at 5 ¶ 12.) This appeal was assigned Number 524287-R2. (Id. at 27, Attach. C.) On December 18, 2009, the Regional Office rejected this appeal because it was not filed with the Central Office, as required. (Id.; Doc. 7-2 at 5 ¶ 12.)

Rivera-Lebron made further attempts to appeal the DHO's decision by filing appeals both at the institutional and regional office level (Numbers 524287-R3, 524287-R4, 524287-R5, 667290-

6

F1, and 524287-R6[4] ), but all of these attempts were rejected because they were filed at the wrong level. (Doc. 7-2 at 5 ¶ 13; Doc. 7-2, Attach. C.)

Following the rejection of these appeals, Rivera-Lebron then attempted to appeal the DHO's decision with the Central Office. (Doc. 7-2 at 6 ¶ 14; Doc. 7-2 at 17, Attach. C.) Rivera-Lebron filed his first appeal with the Central Office about one (1) year after the Regional Office had instructed him in its February 27, 2009 response to file any appeal to the Central Office within thirty (30) days. (Doc. 7-2 at 17, Attach. C.) Hence, all of his appeals filed with the Central Office (Administrative Remedy Numbers 524287-A1, 524287-A2, 524287-A3, 524287-A4, 524287-A5, and 524287-A6) were rejected as untimely. (Id.; Doc. 7-2 at 6 ¶ 14.)

Notably, Rivera-Lebron appealed previous DHO decisions to the Central Office and received decisions on the merits (Remedy Numbers 272376-R1, A2; 307898-R1, A1). (Doc. 7-2 at 17, Attach. C.)

## III. Discussion

### A. Exhaustion of Administrative Remedies

Although 28 U.S.C. § 2241 does not contain a statutory exhaustion requirement, courts in the Third Circuit consistently have required a petitioner to exhaust administrative remedies before filing a petition for a writ of habeas corpus. Moscato v. Fed. Bureau of Prisons, 98 F.3d 757, 760

---

[4] As explained in the Response, the letter "F" in the Remedy ID number indicates that the remedy was filed at the institutional level; the letter "R" indicates that the remedy was filed at the regional office level; and the letter "A" indicates that the remedy was filed at the Central Office level.

7

(3d Cir. 1996) (citing Bradshaw v. Carlson, 682 F.2d 1050, 1052 (3d Cir. 1981) (per curiam)); e.g., Callwood v. Enos, 230 F.3d 627, 632 (3d Cir. 2000). The Third Circuit requires administrative exhaustion for habeas claims raised under § 2241 because "(1) allowing the appropriate agency to develop a factual record and apply its expertise facilitates judicial review; (2) permitting agencies to grant the relief requested conserves judicial resources; and (3) providing agencies the opportunity to correct their own errors fosters administrative autonomy." Moscato, 98 F.3d at 761-62 (citations omitted).

While there are instances where exhaustion may be excused, the Supreme Court has recognized that: "'it is a principle controlling all habeas corpus petitions to the federal courts, that those courts will interfere with the administration of justice . . . only in rare cases where exceptional circumstances of peculiar urgency are shown to exist.'" Rose v. Lundy, 455 U.S. 509, 515-16 (1982) (quoting Ex parte Hawk, 321 U.S. 114, 117 (1944) (internal quotations and footnote omitted)); e.g., Gambino v. Morris, 134 F.3d 156, 171 (3d Cir. 1998) (exhaustion of administrative remedies not required where petitioner demonstrates futility); Lyons v. U.S. Marshals, 840 F.2d 202, 205 (3d Cir. 1988) (exhaustion may be excused where it "[1] would be futile, [2] if the actions of the agency clearly and unambiguously violate statutory or constitutional rights, or [3] if the administrative procedure is clearly shown to be inadequate to prevent irreparable injury").

Moreover, the exhaustion requirement applies even where petitioners are time-barred from pursuing the remaining administrative appeals. Thus, where, as in the instant case, a petitioner fails to file a timely appeal with the General Counsel in the BOP Central Office and can no longer

8

complete the administrative remedy process, the petitioner has committed a procedural default. Moscato, 98 F.3d at 760. Further, where "a federal prisoner who challenges a disciplinary proceeding . . . fails to exhaust his administrative remedies because of a procedural default, and subsequently finds closed all additional avenues of administrative remedy, [he] cannot secure judicial review of his habeas claim absent a showing of cause and prejudice." Id. at 762 (dismissing habeas petition under § 2241 for procedural default because petitioner filed his appeal with the Central Office sixteen (16) days after the thirty (30) day deadline).

In the case at hand, Rivera-Lebron failed to exhaust the available administrative remedies regarding the decision of the DHO. The record demonstrates that he was aware of and understood the procedural requirements for filing administrative remedies inasmuch as he appealed from decisions in prior disciplinary proceedings to the Central Office and received decisions on the merits in those appeals (Remedy Numbers 272376-R1, A2; 307898-R1, A1). (See Doc. 7-2 at 17, Attach. C.) However, with respect to the disciplinary proceedings at issue in this case, Rivera-Lebron failed to follow the clear procedures for appeal- as specified in the Regional Office's February 27, 2009 denial- to file with the BOP's Central Office within thirty (30) days. (Doc. 7-2 at 5 ¶ 11; Doc. 7-2 at 35, Attach. D.) Instead, he waited almost one (1) year after the Regional Office's decision to file an appeal with the Central Office, and the Central Office appropriately rejected that appeal, as well as his subsequent appeals, as untimely. (Doc. 7-2 at 6 ¶ 14; Doc. 7-2 at 17, Attach. C.) As such, it is apparent that Rivera-Lebron procedurally defaulted his claims, and we therefore properly could dismiss the instant Petition for failure to exhaust administrative

remedies and end our discussion here.

Nevertheless, having reviewed the parties' submissions, as more fully explained below, we find that there is no basis for habeas relief because the record shows that there was "some evidence" to support the DHO's finding of guilt at the December 15, 2008 hearing, the record reveals that Rivera-Lebron was afforded all of the due process protections that were required where an inmate faces the disallowance of good conduct time, and the sanctions that were imposed were within the range of sanctions that are permitted for a Code 104 violation. The Petition therefore will be denied on the merits.

### B. Sufficiency of the Evidence

The decision of the hearing examiner will be upheld if there is "some evidence" to support the decision to revoke good time credits. Superintendent v. Hill, 472 U.S. 445, 455 (1985); see also Young v. Kann, 926 F.2d 1396, 1402-03 (3d Cir. 1991) (applying Hill standard to federal prisoner due process challenges to prison disciplinary proceedings). The determination as to whether the standard is satisfied "does not require examination of the entire record, independent assessment of the credibility of witnesses, or weighing of the evidence. Instead, the relevant question is whether there is *any* evidence in the record that could support the conclusion reached by the disciplinary board." Hill, 472 U.S. at 455-56. Under Hill, judicial review of a prison disciplinary decision is limited to ensuring that the prisoner was afforded certain procedures, the action against him was not arbitrary, and that the ultimate decision has some evidentiary support. Id. at 457; see also 28 C.F.R. § 541.8(f) (requiring that the DHO's decision be "based upon at least

10

some facts and, if there is conflicting evidence, on the greater weight of the evidence.")[5]. Moreover, "[t]he sufficiency standard is met where a DHO supports a finding of culpability solely by reference to an incident report compiled by a corrections officer." Moles v. Holt, 221 Fed. Appx. 92, 94 (3d Cir. 2007) (citations omitted).

In his Memorandum of Law accompanying his Petition, Rivera-Lebron argues that the evidence was "altered and falsified" to the extent that the DHO's request to the Reporting Officer for a more specific description of where the weapon was found amounted to an instruction to change the description. (See Doc. 1 at 3.) He also suggests that he could not be found guilty of possession of a weapon where it was discovered in a cell occupied by six men, and argues that there was no evidence that he was in "constructive possession" of the weapon when it was not found "in his bed, or locker, and no one directly or indirectly stated that the weapon was his." (See id. at 4.)

Contrary to Rivera-Lebron's arguments, it is apparent that the DHO's decision was supported by "some evidence" and that the DHO properly documented the findings that led to the decision, and specific evidence relied upon in reaching those findings, as required by 28 C.F.R.

---

[5]The language contained in 28 C.F.R. § 541.8(f), which is part of the revision of the BOP's Inmate Discipline Program Regulations that became effective on June 20, 2011, formerly was contained in 28 C.F.R. § 541.17(f), which was the regulation in place at the time of the December 15, 2008 hearing in this case.

11

§ 541.8(h).[6] With respect to Rivera-Lebron's claim that the evidence was "altered and falsified", the incident report clearly states that, while searching Rivera-Lebron's bed, the weapon was discovered "behind the left head end leg on the bedframe." (Doc. 7-2 at 39 ¶ 11.) Further, the more specific description that was offered by the Reporting Officer in response to the DHO's inquiry clarified that the weapon was "discovered in the leg of the bed occupied by Rivera-Lebron." (See id. at 46 § V.) Based upon either description, the weapon was found close to or within Rivera-Lebron's bed. Further, Rivera-Lebron admitted that he had occupied the bed in question for two to three months prior to the incident. (See id. at 45 § III ¶ B.) Thus, his argument that the evidence regarding the location of the weapon was altered or falsified lacks any basis in the record.

More importantly, contrary to Rivera-Lebron's argument, a weapon does not have to be found directly on his bed, and he does not have to be the sole occupant of a cell, in order to be charged with, and found guilty of, possession of a weapon. Rather, pursuant to BOP Policy, inmates are responsible to keep their assigned quarters free and clear of contraband at all times.[7] Further, other courts considering circumstances similar to those presented in this case have found that, regardless of where contraband is found in a cell, and regardless of whether other inmates also occupy the cell, an inmate may be held responsible for possession of contraband under the

---

[6]The language contained in 28 C.F.R. § 541.8(h) formerly was contained in 28 C.F.R. § 541.17(g), which was in effect at the time of the December 15, 2008 hearing in this case.

[7]BOP Program Statement 5270.09, Inmate Discipline Program, Appendix C, Inmate Responsibilities, Paragraph 4, provides, in relevant part, "It is your responsibility . . . to keep your area free of contraband." See BOP Policies, available at http://www.bop.gov

doctrine of constructive possession such that sufficient evidence would exist to support a DHO's finding of guilt of possession of contraband. See Gebbia v. Holt, 2007 WL 1893721, at *3 (M.D. Pa. July 2, 2007) (Jones, J.) (citing Vega v. Williamson, 2005 WL 3117677, at * 3 (M.D. Pa. Nov. 22, 2006) (Kosik, J.) (applying the doctrine of constructive possession to inmates sharing a cell); Hamilton v. O'Leary, 976 F.2d 341, 345 (7th Cir. 1992) (same); White v. Kane, 860 F. Supp. 1075, 1078 (E.D. Pa. 1994) (same), aff'd, 52 F.3d 319 (3d Cir. 1995)); see also Bailey v. Nash, 2005 WL 2300367, at *3 (M.D. Pa. Sept. 21, 2005) (Conner, J.) (rejecting petitioner's claim that evidence against him was questionable because he lived in area with six to ten inmates and finding DHO's decision to be supported by "some evidence").

At bottom, where the DHO did not rely solely on the incident report in reaching a finding of guilt, but also relied on the photograph of the weapon, and the more specific description from the Reporting Officer, which confirmed that the weapon was found in Rivera-Lebron's bed, as well as Rivera-Lebron's own statement at the DHO hearing confirming that he occupied that bed for two to three months prior to the incident, the DHO's finding of guilt is based on "some evidence." Thus, we reject Rivera-Lebron's evidentiary challenge in this action.

### C.  Due Process Protections

Federal inmates possess a liberty interest in good conduct time. Wolff v. McDonnell, 418 U.S. 539, 555-57 (1974); Young v. Kann, 926 F.2d 1396, 1399 (3d Cir. 1991). In the case at hand, River-Lebron ultimately was sanctioned with the loss of forty-one (41) days of good conduct time,

13

as well as the forfeiture of twenty-seven (27) days of non-vested good conduct time, and therefore, he has identified a liberty interest that is at stake in this matter.

In Wolff, where the plaintiffs were deprived of good time credits as a severe sanction for serious misconduct, the Supreme Court held that such inmates had various procedural due process protections in a prison disciplinary proceeding, including **(1)** the right to appear before an impartial decision-making body; **(2)** twenty-four hour advance written notice of the charges; **(3)** an opportunity to call witnesses and present documentary evidence, provided the presentation of such does not threaten institutional safety or correctional goals; **(4)** assistance from an inmate representative, if the charged inmate is illiterate or if complex issues are involved; and **(5)** a written decision by the fact finders as to the evidence relied upon and the rationale behind their disciplinary action. Wolff, 418 U.S. at 563-71. It is apparent upon review of the record as summarized in the Factual Background section, supra, that Rivera-Lebron was afforded each of these protections. Accordingly, to the extent Rivera-Lebron asserts a due process challenge in these proceedings, his challenge is without merit.

D. **Sanctions**

The sanctions that were imposed on Rivera-Lebron as a consequence of being found guilty of possession of a weapon, namely forty-five (45) days in disciplinary segregation, the disallowance of forty-one (41) days of good conduct time, the forfeiture of twenty-seven (27) days of non-vested good conduct time; and a recommended disciplinary transfer (see Doc. 7-2 at 46 § VI), are within

14

the range of sanctions that are permitted for a 100-level, greatest severity prohibited act, in this case, for Code 104, Possession or Manufacture of a Weapon. See 28 C.F.R. § 541.3(b), Table 1.[8] Accordingly, any challenge by Rivera-Lebron to the sanctions that were imposed lacks merit.

## IV. Conclusion

Because there was "some evidence" to support the DHO's finding of guilt following the December 15, 2008 hearing in this case, Rivera-Lebron was afforded each of the due process protections set forth in Wolff, supra, and the sanctions that were imposed were within the permissible range, we find that Rivera-Lebron is not entitled to habeas relief, and therefore, the Petition will be denied. An appropriate Order will enter on today's date.

November 6, 2012

Robert D. Mariani
United States District Judge

---

[8]The list of Prohibited acts and available sanctions for Greatest Severity Level Prohibited Acts which currently is contained in 28 C.F.R. § 541.3(b), Table 1 was contained in 28 C.F.R. § 541.13, Tables 3 and 4, at the time of the December 15, 2008 hearing in this case.

15